FILED

2011 May-05 PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

THE BANK OF NEW YORK MELLON )
TRUST COMPANY, N.A., )
as Indenture Trustee, )
                                         )
      Plaintiff, )
                                           )
v. )    Case No. _____
                                           )
SALEM NURSING & REHAB CENTER )
OF REFORM, INC., THE MEDICAL )
CLINIC BOARD OF THE CITY OF )
REFORM, ALABAMA, and ALTACARE )
CORPORATION, )
                                           )
      Defendants. )

---

## COMPLAINT FOR DAMAGES AND ACCOUNTING
---

COMES NOW, Plaintiff, The Bank of New York Mellon Trust Company, N.A., as successor Indenture Trustee (the "Trustee"), acting not in its individual capacity but solely in its capacity as indenture trustee for two series of bonds in the original aggregate principal amount of $3,075,000 and for its complaint against the Defendants Salem Nursing & Rehab Center of Reform, Inc. ("SNRC"), The Medical Clinic Board of the City of Reform, Alabama ("Issuer"), and AltaCare Corporation ("AltaCare," and together with the other named Defendants, the

"Defendants") states as follows:

## I. <u>NATURE OF ACTION</u>

1.      Pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure, Trustee seeks the enforcement of the terms and conditions of the following documents: (i) that certain Indenture of Trust dated as of May 1, 1995 (the "Original Indenture"), between Trustee, as successor Indenture Trustee to The Chase Manhattan Bank, as successor to Compass Bank, and the Issuer; (ii) that certain First Supplemental Indenture dated as of September 1, 2000 (the "Supplemental Indenture," and together with the Original Indenture, the "Indenture"); (iii) that certain Lease Agreement dated as of May 1, 1995 (as amended from time to time, the "Original Lease Agreement"), between Salem Housing Corporation and the Issuer; (iv) that First Supplemental Lease Agreement dated as of September 1, 2000 (the "Supplemental Lease Agreement," and together with the Original Lease Agreement, the "Lease Agreement"); (v) that certain Security Agreement  dated as of May 1, 1995 (the "Security Agreement") executed by Salem Housing Corporation in favor of the Trustee as successor Indenture Trustee to The Chase Manhattan Bank, as successor Indenture Trustee to Compass Bank; (vi) that certain Mortgage, Security Agreement and Fixture Filing dated as of May 1, 1995 (the "Mortgage") executed by Issuer in favor of the Trustee, as successor Indenture Trustee to The Chase Manhattan Bank, as successor Indenture

Trustee to Compass Bank; and (vii) that Assumption of Obligations Under First Mortgage, Security Agreement, and Fixture Filings and Other Bond Documents dated as of September 1, 2000 (the "Assumption Agreement"), between Trustee, as successor Indenture Trustee to The Chase Manhattan Bank, and SNRC. Collectively, the foregoing documents, together with any and all documents executed in connection therewith, are referred to herein as the "Bond Documents."

2.      The Bond Documents relate to those bonds issued by the Issuer on May 1, 1995 in two series totaling the aggregate principal amount of $3,075,000 under the Original Indenture (the "Bonds"). In keeping with the purpose of the issuance of the Bonds, the proceeds of the Bonds were loaned to Salem Housing Corporation to finance the acquisition and improvement of a 85-bed nursing facility previously known as the Reform Health Care Center (n/k/a Salem Nursing & Rehab Center of Reform), located in Reform, Pickens County, Alabama (as defined in the Lease, the "Project").   The Project, and together with the real property, buildings, improvements, rents, accounts, revenues, personal property, fixtures, furniture, furnishings, machinery, equipment, appliances and appurtenances located thereon is sometimes referred to as the "Premises."   SNRC is currently in possession of the Premises.

3.      The Trustee is authorized under the Indenture and related Bond Documents to act on behalf, and in the interests, of the owners of the Bonds (the

"Bondholders").  The Bonds are special limited obligations of the Issuer payable from the payments to be made by Defendant SNRC under the Lease Agreement. The Issuer's obligations to the Bondholders are, however, secured by, *inter alia*, a deed of trust lien and security interest on the Premises, including all gross revenues generated from same, as well as by certain funds on deposit with Trustee.

4.      SNRC and the Issuer have defaulted under the terms of the Lease Agreement, the Indenture, and the related Bond Documents.  As a result, Trustee is entitled and authorized, in its capacity as indenture trustee and on behalf of the Bondholders, to enforce its remedies under the Bond Documents, including, among other things, obtaining the following relief:  (1) monetary relief against SNRC for the outstanding balance due under the Bond Documents, plus pre- and post-judgment interest, the Trustee's fees and expenses, including administrative and default fees and expenses, the costs of pursuing this action or otherwise pursuing any remedies provided by the Bond Documents, and the Trustee's attorneys' fees and expenses, and (2) all further equitable and legal relief which may be necessary to effectuate the purposes of this lawsuit.

## II.  <u>JURISDICTION AND VENUE</u>

5.      Plaintiff Trustee is a national banking association with its principal office located in Los Angeles, California.  The Trustee is bringing this suit in its capacity as indenture trustee under the Indenture and for the benefit of the

4411424.4

4

Bondholders.  Trustee is the proper party in interest to enforce the terms and conditions of the Bond Documents.  In addition, Trustee is entitled to pursue its remedies under the Bond Documents and at law or equity.  Trustee has complied with all conditions precedent to bringing this action under the Bond Documents.

6.     Defendant SNRC is a non-profit corporation organized and existing under the laws of the State of Georgia and is purportedly authorized to do business in the State of Alabama, with its principal place of business located at 500 Floyd Road, Calhoun, Georgia 30701.  The chief contact for SNRC listed on the Georgia Secretary of State's website is Alfred Cowley, President, with offices at the aforementioned address.  The notice address for SNRC under the Bond Documents is 559 Fairhope Avenue, Suite 7, Fairhope, Alabama 36532, attn: President.  The Registered Agent listed for SNRC on the Georgia Secretary of State's website is Evelyn Brown at 5895 Windward Parkway, Suite 200, Alpharetta, Georgia 30005.

7.     Defendant Issuer is a public, nonprofit corporation and a public instrumentality of the State of Alabama organized and existing under the laws of the State of Alabama.  The notice address for Issuer is The Medical Clinic Board of the City of Reform, Alabama, c/o City Hall, 104 Third Avenue, SE, Reform, Alabama 35481, Attn: Chairman.  Because of the conduit financing nature of the transaction, the Issuer is not responsible for making payments on the Bonds. Such payment is designed to be generated solely from SNRC via the rents and other

income at the Project.  However, because Issuer has an interest in the Project, the Issuer is a proper party Defendant unless and until such time as Issuer waives and relinquishes any interest in the Project and the outcome of this action.

8.     Defendant AltaCare is a Georgia corporation.  On information and belief, AltaCare's principal place of business is located at 5895 Windward Parkway, #200, Alpharetta, Georgia  30005.  The Registered Agent listed for AltaCare on the Georgia Secretary of State's website is Evelyn Brown at 5895 Windward Parkway, Suite 200, Alpharetta, Georgia 30005.  AltaCare is not obligated under the Bond Documents.  However, because AltaCare, as the current manager of the Project, asserts an interest in the Project and other Collateral and controls the Project's records, AltaCare is a proper party Defendant unless and until such time as AltaCare waives and relinquishes any interest in the Collateral and the outcome of this action.

9.     The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

10.     Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the Project that is the subject of this action is located in Reform, Pickens County, Alabama, which lies in the United States District for the Northern District of Alabama.

### III.  **THE TRANSACTIONS**

12.     The Issuer and Trustee entered into the Original Indenture as of May 1, 1995, which, *inter alia*, authorized the Issuer to issue the Bonds. The Bonds were issued in two separate series on May 1, 1995 of: (a)  $2,720,000 aggregate principal amount of its The Medical Clinic Board of the City of Reform, Alabama First Mortgage Revenue Bonds (Reform Health Care Center Project) Series 1995A (the "Series 1995A Bonds"), and (b) $355,000 aggregate principal amount of its The Medical Clinic Board of the City of Reform, Alabama Taxable First Mortgage Revenue Bonds (Reform Health Care Center Project) Series 1995B (the "Series 1995B Bonds," together with the foregoing as the "Series 1995 Bonds").  The proceeds of the Series 1995 Bonds were used to finance the acquisition and improvement of the Premises by Salem Housing Corporation.  A true and correct copy of the Original Indenture is attached hereto as Exhibit A.

13.     Salem Housing Corporation filed a Chapter 11 Plan of Reorganization (as amended, the "Bankruptcy Plan") in the United States Bankruptcy Court, Southern District of Georgia, Augusta Division (the "Bankruptcy Court"), case no. 98-13450-JSD (the "Bankruptcy Case"), which was confirmed in an order issued by the Bankruptcy Court on August 31, 2000 (the "Confirmation Order").  The Confirmation Order required certain amendments and supplements to the Original Indenture and Original Lease Agreement, including, as more fully discussed

below, SNRC's assumption of certain of the debts and liabilities of Salem Housing Corporation.

14.     On September 1, 2000, the Issuer and Trustee entered into the First Supplemental Indenture that amended and supplemented the Original Indenture so as to conform with the terms of the Bankruptcy Plan and the Confirmation Order. A true and correct copy of the Supplemental Indenture is attached hereto as Exhibit B.

15.     As of May 4, 2011, only the Series 1995A Bonds remain outstanding in the principal amount of  $2,425,000.00.

16.     In connection with the issuance of the Bonds, Salem Housing Corporation entered into the Original Lease Agreement with the Issuer.   The purpose of the Original Lease Agreement was to facilitate the conduit financing provided by the Bonds.  Accordingly, Salem Housing Corporation obligated itself under the Original Lease Agreement to make payments sufficient to pay the obligations due under the Bonds.  Salem Housing Corporation, as succeeded to by SNRC, was, and is, for purposes of this action, the real party in interest with respect to the Bonds and ownership of the Project.  A true and correct copy of the Original Lease Agreement is attached hereto as Exhibit C.

17.     In connection with the Bankruptcy Case and the execution of the Supplemental Indenture, Salem Housing Corporation and the Issuer executed the

Supplemental Lease Agreement, amending the Original Lease Agreement in accordance with the terms of the Confirmation Order. A true and correct copy of the Supplemental Lease Agreement is attached hereto as <u>Exhibit D</u>.

18.    To secure its obligations under the Lease, Salem Housing Corporation granted the Trustee a first lien and security interest in the Collateral (defined below) by executing and delivering to Trustee the Security Agreement.  A true and correct copy of the Security Agreement is attached hereto as <u>Exhibit E</u>. The Trustee's lien and security interest in the Collateral was further perfected by the filing of a UCC-1 Financing Statement ("UCC-1") with the Secretary of State's Office for the State of Georgia, which has been continued as necessary.  A true and correct copy of the UCC-1 is attached hereto as <u>Exhibit F</u>.

19.    To secure its obligations under the Indenture, Issuer granted the Trustee a first lien and security interest in the Project, together with all other Collateral  by executing and delivering to Trustee the Mortgage, which was recorded in the office of the Probate Court of Pickens County, Alabama at book 76 and page 619.  A true and correct copy of the Mortgage is attached hereto as <u>Exhibit G</u>.

20.    To secure payment of the Bonds, the Issuer assigned all of its rights, title and interests under the Lease Agreement and the Series 1995 Bonds to the Trustee, pursuant to the Indenture, which was recorded in the office of the Probate

Court of Pickens County, Alabama at book 76 and page 488.

21.    In accordance with the terms of the Bankruptcy Plan and the Confirmation Order, Salem Housing Corporation transferred its interest in and to the Premises to SNRC, and SNRC assumed all of the covenants, conditions, duties and obligations contained in the Bond Documents, including the payment and other obligations contained in the Lease Agreement, pursuant to the Assumption Agreement, which was recorded in the office of the Probate Court of Pickens County, Alabama at book 146 and page 837.   A true and correct copy of the Assumption Agreement is attached hereto as Exhibit H.

22.    Pursuant to the Mortgage, Security Agreement, Assumption Agreement and other Bond Documents, the Trustee has properly perfected liens and security interests in the following property (collectively, the "Collateral"):

(a)    the real estate situated in Pickens County, Alabama described in Exhibit A of the Mortgage, together with (i)  all the buildings and other improvements now on or hereafter located thereon including, without limitation, the Premises;  (ii) all fixtures now or hereafter attached or affixed to or installed in said buildings and other improvements, including, but not limited to, all heating, cooling, plumbing, lighting, water heating, cooking, laundry, refrigerating, incinerating, ventilating and air condition equipment, disposals, dishwasher, refrigerators and ranges, recreational equipment and

apparatus, utility lines and equipment (whether owned individually or jointly with others) sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, engines, machines, elevators, motors, cabinets, shades, blinds, partitions, window screens, screen doors, storm windows, awnings, drapes, and rugs and other floor coverings, and all fixtures, accessions and appurtenances thereto, licenses and movable equipment, and all renewals or replacements or substitutions for any of the foregoing, all of which materials, equipment, fixtures and other property are hereby declared to be permanent fixtures and accessions to the freehold and part of the realty; (iii) all easements and rights of way now and at any time hereafter used in connection with any of the foregoing property or as a means of ingress to or egress from said property or for utilities to sold property; (iv) all title and interest of Issuer in and to any water, sanitary and storm sewer systems, together with all paving, streets, ways, alleys and/or strips of land and adjoining said land or any part thereof; and (v) all rights, estates, powers and privileges appurtenant or incident to the foregoing;

(b)     a security interest in all fixtures of whatever nature then or thereafter located or used in and about the building or buildings or other improvements then erected or thereafter to be erected or hereafter to be erected on the land described in Exhibit A of the Deed of Trust, or otherwise

located on said lands, and all fixtures accessions and appurtenances thereto, and all renewals or replacements of or substitutions for any of the foregoing and all proceeds from any of the foregoing;

(c)     all of the rents, income, receipts, revenues, issues, profits and proceeds to be derived from the Mortgaged Premises (as defined in the Mortgage), including, without limitation, the immediate and continuing right to collect and receive all of the rents, income receipts, revenues, issues, profits and other sums of money (hereinafter called the "Rent") that are now and/or at any time hereafter become due and payable under the terms of any leases (hereinafter called the "Leases") now or hereafter covering the Project, or any part thereof, or arising or issuing from or out of the Leases or from or out of the Project or any part thereof, including but not limited to minimum rents, additional rents, percentage rents, deficiency rents, and liquidated damages following default, security deposits, advance rents, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Projects, and all of Issuer's and SNRC's rights to recover monetary amounts from any lessee in bankruptcy including, without limitation, rights of recovery for use and occupancy and damage claims arising out of lease defaults, including rejections, under any applicable law, including

4411424.4

specifically the immediate and continuing right to collect and receive each and all of the foregoing;

(d)     all of the equipment, machinery, furnishings, and other property located at the Premises, and all replacements, substitutions, and additions thereto; and

(e)     all account, general intangibles, contract rights, chattel paper, instruments, and documents which then existed or which thereafter have arisen or were created, in connection with or with respect to the Project and any Improvements (as defined in the Lease) and all cash and non-cash proceeds thereof, and all other revenues, income, receipts and money received or receivable in any period by or on behalf of Issuer or SNRC from or with respect to the Project and any Improvement and all cash and non-cash proceeds thereof, including, but without limiting the generality of the foregoing (1) revenues derived from the operation of the Project and any Improvements, (2) gifts, grants, bequests, donations and contributions except to the extent specifically restricted by the donor to a particular purpose inconsistent with their use for the payment of amounts payable under the Bond Documents; and (3) proceeds derived in connection with or with respect to the Project and Improvements from (i) insurance, except to the extent the use thereof is otherwise required by the Lease; (ii) accounts, (iii)

securities and other investments, (iv) inventory and other tangible and intangible property, (v) medical expense, reimbursement or insurance programs or agreements, and (vi) contract rights and other rights and assets then or thereafter owned, held or possessed by or on behalf of SNRC or the Issuer.

## IV.  THE EVENTS OF DEFAULT

23.    SNRC has repeatedly failed to pay timely and fully many of the amounts due under the Bond Documents.  The specifics regarding the defaults are detailed below.

24.    Pursuant to the Bond Documents, including the Lease Agreement, SNRC is required, *inter alia*, to make the following payments to the Trustee:

(a)    Each month SNRC is to make a payment (the "P&I Payments") to the Trustee in an amount equal to one-sixth $(1/6^{th})$ of the aggregate amount of interest and one-twelfth $(1/12^{th})$ of the aggregate amount of principal payable by the Issuer to the Trustee on the next succeeding Bond interest payment date for the Series 1995 Bonds;

(b)    SNRC is required to maintain the Repair and Replacement Fund ("RR Fund") for the Series 1995 Bonds in an amount equal to $2,200.00 per month until the amount in the RR Fund equals $40,000.00 (the "RR Requirement").  Currently, the RR Fund aggregate shortfall is

$16,373.10;

(c)    SNRC is to pay, as billed, the Trustee's fees and expenses, including attorney's fees and expenses, incurred by the Trustee in connection with administering the Indenture.

25.    Since May 1, 2009, SNRC has failed to pay timely and fully amounts due under the Bond Documents which further resulted in defaults on the Bonds and under the Indenture.  The Trustee repeatedly informed SNRC that its continuing failure to timely pay (or to pay at all) amounts due by SNRC were necessitating extraordinary Trustee activity and creating fees and expenses to SNRC's account.

26.    As of May 4, 2011, SNRC was in arrears to the Trustee, on account of missed P&I Payments and missed RR Requirement payments (each an "RR Payment"), in the aggregate outstanding amount of $593,355.62.  Each instance in which SNRC missed a P&I Payment or a RR Payment, was late with a P&I Payment or a RR Payment, or such P&I Payment or RR Payment was insufficient in amount, was a default under the Bond Documents.

27.    Pursuant to the Bond Documents, the Trustee is entitled to be paid an annual fee that is designed to compensate the Trustee for its annual time and expenses for routine trust administration, including monitoring both the above payment requirements as well as certain covenant requirements under the Bond Documents.  Upon the occurrence of an Event of Default, however, the duties of

the Trustee are enhanced.  The Trustee is entitled to be paid for such additional duties as well as to be reimbursed for the fees and expenses of professionals (including attorneys) the Trustee engages to assist in addressing the Events of Default.  To the extent the Trustee is required to take certain extraordinary steps and incur additional fees to enforce the Bond Documents, SNRC is required under the Bond Documents to pay all of the Trustee's fees and expenses, including its reasonable attorney fees.

28.    SNRC has failed to reimburse the Trustee for such fees and expenses, despite having been billed for same.  As of May 4, 2011, the Trustee's administrative fees in the amount of $41,718.42, along with the Trustee's default fees and its legal and other professional expenses remained outstanding (the "Fees and Expenses").  SNRC's failure to pay the Fees and Expenses is a default under the Bond Documents.

29.    All events of default described above are currently existing and continuing, and are collectively referred to herein as the "Events of Default." The Events of Defaults have continued through the date of Trustee's filing of this Complaint For Damages and Accounting (the "Complaint").

30.    Under the Bond Documents, the aggregate outstanding principal balance of the Bonds (consisting only of the Series 1995A Bonds) as of May 4, 2011 is $2,425,000.00.

31.    In addition, interest and other amounts continue to accrue, including without limitation:

(a)    interest continues to accrue under the Bond Documents on the Series 1995A Bonds at the per diem rate of $586.09;

(b)    the Trustee's Fees and Expenses will continue to accrue under the Bond Documents.

32.    The entire amount of principal and interest outstanding under the Bonds is immediately due and payable under the Bond Documents.

33.    Pursuant to the terms of the Bond Documents, the Trustee is also entitled to recover the Fees and Expenses.

34.    Upon information and belief, CapitalSource Finance, LLC ("CapitalSource") and the State of Alabama may claim some interest in the Project or other Collateral, as revealed by a title search of the Project and UCC search of the Debtor through the Alabama and Georgia Secretaries of State.    Douglas Mittleider, on behalf of Defendant AltaCare, has indicated to the Trustee that any indebtedness owing to CapitalSource has been assigned to AltaCare.    Nonetheless, each of CapitalSource and the State of Alabama have been provided notice of the filing of this Complaint.

## V.  COUNT I
### (Money Owed)

35.    Plaintiff incorporates by reference the averments in paragraphs 1-34

as if fully set forth herein.

36.     As a direct and proximate result of the Events of Default, Trustee is entitled to recover from SNRC all amounts payable under the Bond Documents, including without limitation any amounts that will come due while this Complaint is pending, plus pre- and post-judgment interest, other costs incurred under the Bond Documents, including costs incurred by Trustee in enforcing the Bond Documents, administrative and default fees and expenses, and the costs of pursuing this action, and including without limitation reasonable attorneys' fees and expenses.

37.     Finally, Trustee is also entitled to recover from the Issuer all amounts due and owing on the Bonds and under the Indenture; provided, however, Trustee is entitled to enforce Issuer's obligations only to the extent of the Collateral.

38.     Pursuant to Sections 10.4 of the Lease Agreement, 1.10 and 2.5 of the Mortgage, and 11.2 of the Indenture, SNRC is liable to and shall pay upon demand to Trustee, all reasonable fees and disbursements of such persons and their agents (including attorneys' fees and expenses) which are reasonably connected with or incidental to the Events of Default.

39.     Accordingly, Trustee seeks a judgment for damages against SNRC and Issuer, jointly and severally, in the amount of not less than $2,905,074.04, plus interest, fees, expenses and charges which continue to accrue, with such judgment

to be enforceable in accordance with the terms and applicable limitations, if any, of the Bond Documents; provided, however, Trustee does not seek any recourse against the Issuer to collect such judgment other than from the Collateral. Trustee is entitled to full recourse against SNRC, except as modified by the Lease.

40.     Trustee expressly reserves all rights to amend this Complaint to seek additional damages as they accrue and to seek any and all available remedies, and this claim for damages is made without waiving, and without prejudice to, Trustee's right to foreclose on the Collateral under the Bond Documents, or to exercise any other rights or remedies available to Trustee, including its rights and remedies against any co-obligors, if any, such as guarantors.

## VI.  COUNT II
### (Accounting)

41.     Plaintiff incorporates by reference the averments in paragraphs 1-40 as if fully set forth herein.

42.     Pursuant to Section 6.5 of the Lease Agreement, SNRC is required to provide to the Trustee annually a complete audit report and opinion certified by an Independent Accountant containing a balance sheet, income statement results of operations and statement of cash flows, a certificate of Gross Revenues for such year and other pertinent information of SNRC as of the end of such year.

43.     SNRC and AltaCare have failed to timely provide such audit and financial information to the Trustee. This has led to an unknown number of

improper classification of expenses and recording of income and the apparent diversion of revenues from the Project to other AltaCare-managed skilled nursing facilities.

44.    The Trustee is entitled to an accounting from SNRC and AltaCare of the Project's revenues and expenses.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, premises considered, Trustee requests the following relief:

A.    That the Court enter judgment in favor of Trustee, against SNRC and Issuer, jointly and severally, in the aggregate amount of not less than $2,905,074.04, plus any amounts that will come due while this Complaint is pending, plus pre- and post-judgment interest, other costs incurred under the Bond Documents, the Trustee's Fees and Expenses, including administrative and default fees and costs incurred by Trustee in enforcing the Bond Documents, including without limitation reasonable attorneys' fees and expenses and the costs of pursuing this action; provided however, that the judgment provide that Trustee shall have no recourse to satisfy such judgment against the Issuer other than from the Collateral; and

B.    That the Court order SNRC and AltaCare to provide to the Trustee an accounting of the Project's revenues and expenses, including any financial reporting required under the terms of the Bond Documents; and

C.    For all further, necessary and just relief which may be requested.

Respectfully submitted:

By:    *s/ Ryan K. Cochran*
Larry B. Childs (CHI004)
WALLER LANSDEN DORTCH &
DAVIS, LLP
1901 Sixth Avenue North
Suite 1400
Birmingham, AL 35203
Phone: (205) 214-6380
Fax: (205) 214-8787

- and –

Ryan K. Cochran  (COC020)
WALLER LANSDEN DORTCH &
DAVIS, LLP
511 Union Street
Suite 2700
Nashville, TN  37219
Phone: (615) 244-6380
Fax: (615) 244-6804

Of Counsel:
Katie G. Stenberg (TNBPR #22301)
WALLER LANSDEN DORTCH &
DAVIS, LLP
511 Union Street
Suite 2700
Nashville, TN  37219
Phone: (615) 244-6380
Fax: (615) 244-6804

*Attorneys for Plaintiff The Bank of
New   York Mellon, as successor Indenture
Trustee*

Serve Defendants:

SALEM NURSING & REHAB CENTER OF REFORM INC
C/O EVELYN BROWN
5895 WINDWARD PKWY STE 200
ALPHARETTA GA 30005

THE MEDICAL CLINIC BOARD OF THE CITY OF REFORM AL
C/O CITY HALL
104 THIRD AVE SE
REFORM, AL 35481
ATTN: CHAIRMAN

ALTACARE CORPORATION
C/O EVELYN BROWN
5895 WINDWARD PKWY STE 200
ALPHARETTA GA 30005